UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MELODY SOYKA,

                Plaintiff,

     v.

NANCY BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

                Defendant.

Case No. SACV 16-00864 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

Melody Soyka ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Agency") denying her

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

application for Disability Insurance Benefits ("DIB"). On May 10, 2016, Plaintiff filed a complaint (the "Complaint") commencing the instant action. On October 4, 2016, Defendant filed an Answer to the Complaint (the "Answer") along with the Administrative Record ("AR"). On November 8, 2016, Plaintiff filed a memorandum in support of the Complaint ("Pl. MSO"). On January 17, 2017, Defendant filed a memorandum in support of the Answer ("Def. MSO"). On January 31, 2017, Plaintiff filed a reply (the "Reply"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 12). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB on September 5, 2013. (AR 118-121). Plaintiff alleged a disability onset date of August 6, 2012. (AR 118). The Agency denied Plaintiff's application on December 30, 2013. (AR 60-62). On January 29, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 63-64). On September 12, 2014, ALJ Joan Ho conducted a hearing to review Plaintiff's claim. (AR 24-48). Plaintiff, represented by Troy Monge, testified before the ALJ. (AR 30-43). At the hearing, Plaintiff requested to amend her alleged disability onset date to July 16, 2013. (AR 29). Vocational expert ("VE") Susan Allison also testified at the hearing. (AR 44-47). On November

12, 2014, ALJ Ho found that Plaintiff was not disabled under the Social Security Act. (AR 9-20). Plaintiff sought review of the ALJ's decision before the Appeals Council on January 7, 2015. (AR 7-8). On March 25, 2016, the Appeals Council denied review. (AR 1-3). As such, the ALJ's decision became the final decision of the Commissioner. (AR 1). Plaintiff commenced the instant action on May 10, 2016. (Dkt. No. 1).

### III.

### FACTUAL BACKGROUND

Plaintiff was born on March 10, 1958. (AR 118). She was 55 years old as of the alleged disability onset date of July 16, 2013. She was 56 years old when she appeared before the ALJ. (AR 30). Plaintiff completed the twelfth grade and received a high school diploma. (AR 31, 202). For fifteen years prior to her alleged disability onset date, Plaintiff worked as a nanny. (AR 134, 139). Prior to that, Plaintiff worked as a file clerk, preschool teacher, and cashier. (AR 202).

In the Disability Report, Plaintiff alleged that back problems, peripheral neuropathy, chondromalacia patellae, ulcerative colitis, a learning disability, osteoporosis, and "knees, stomach, etc." limit her ability to work. (AR 132). According to medical records, Plaintiff has chronic low back pain that worsened in September of 2012 when a vehicle that was backing up struck her car. (AR 215).

At the hearing, Plaintiff testified that she no longer has problems with ulcerative colitis (AR 36), but that she has "scoliosis, arthritis … osteoporosis sponlykiosis [phonetic] … [and] neuritis." (AR 35).

## A. **Plaintiff's Testimony**

Plaintiff testified that she stopped working on August 6, 2012 because she "fractured [the] 5th metatarsal in [her] left foot." (AR 32). She was out on disability from August until October and was subsequently let go for not coming back to work at a particular time. (Id.). She testified that, after this injury, she received Worker's Compensation for her medical bills. (Id.). She also testified that she was on unemployment from October 12, 2012 until December 2013. (Id.).

Plaintiff testified that her physician restricted her to standing and walking twenty-five percent of the time and sitting only a certain percentage of the time. (AR 33). She testified that she looked for work adhering to these restrictions but was unable to find anything. (AR 32). Specifically, Plaintiff testified that she looked for office work and nanny jobs. She testified that, had she received an office job allowing her to work within the guidelines of her restrictions, she would have been able to do it. (AR 33).

Plaintiff testified that she has been unable to work since July 16, 2013 because her back has gotten increasingly worse and

she feels that "no employer will hire [her]" with her postural restrictions. (AR 32). She stated that her back pain is "really bad" and that every day she has to "lie in bed because the pain is so great." (AR 34). Plaintiff further testified that the pain is located in her lower back, below the belt line, and that doctors gave her pain medications and back exercises to decrease her pain. (Id.). Plaintiff testified that, in February of 2013, she did these back exercises in her bed for 30 minutes a day, seven days a week. (AR 41-42). Plaintiff testified that doctors have not recommended any treatment aside from medication and physical therapy (AR 38) and that doctors told her that there is nothing they can do for her condition. (AR 35). She stated that while one doctor recommended an epidural injection a long time ago, there was no guarantee that it would help. (AR 39).

Plaintiff testified that she also has neuritis, meaning that she does not have enough padding in her feet and is "stepping on [her] nerves all the time, and [her] feet are in pain 24/7." (AR 35). Plaintiff testified that, on a scale from 1 to 10, she would rate her pain an 8. (AR 38). When she takes her medication, which consists of Evista for osteoporosis, Tylenol, Codeine, and another medication that she could not recall the name of, Plaintiff would rate her pain a 7. (AR 38) Plaintiff testified that, at the time of the hearing, she did not have problems with ulcerative colitis (AR 36), though it was alleged in the Disability Report. She also stated that her knees pop if she repetitively kneels, bends, and stoops, but that she stays in the guidelines of what she is not supposed to do and has been doing well. (AR 42-43).

Plaintiff testified that she does household chores, including loading the dishes as she eats her meals and the laundry when necessary. (AR 43). She testified that she drives every day without limits. (AR 31). However, she does not vacuum because it hurts her back (AR 43) and she cannot lift two gallons of milk. (AR 35).

**B. Treating Physicians**

**1. Diane A. Song, M.D.**

On March 29, 2013, Plaintiff visited her treating physician, Dr. Diane A. Song, M.D., to follow-up on back pain. (AR 463). Pursuant to this visit, Dr. Song completed a progress note, wherein she stated that Plaintiff "completed a course of physical therapy and was also evaluated by physical medicine and given work restrictions." (AR 463). Under "Assessment/Plan", Dr. Song wrote "Low back pain: Ok to return to work as a nanny." (Id.).

On July 16, 2013, Dr. Song completed a "Work Status Report", diagnosing Plaintiff with "strain of back", stating that she "is placed on permanent modified work/activity restrictions" including that she could sit and stand "[o]ccasionally (up to 25% of shift)" and could lift/carry/push/pull no more than 10 pounds. (AR 214). On August 2, 2013, Dr. Song completed another "Work Status Report", diagnosing Plaintiff with "osteoporosis, spondylosis cervical joint wo myelopathy, chronic neck pain, strain of lumbar region"

and opining the same restrictions to Plaintiff's activities. (AR 213).

**2. Alberto Ezroj, M.D.**

On August 6, 2013, Plaintiff's treating family physician, Dr. Alberto Ezroj, M.D., examined Plaintiff and noted that she had normal range of motion of back without spasm or exacerbation of pain, normal strength in her extremities, and did not exhibit any musculoskeletal tenderness. (AR 514). Dr. Ezroj listed Plaintiff's primary encounter diagnosis as "strain of back." (Id.).

On September 11, 2013, Dr. Ezroj completed a "Medical Assessment of Ability to do Work-Related Activities" form. (AR 198). Therein, Dr. Ezroj opined that Plaintiff can only lift/carry up to 10 pounds, can only stand or walk for 30 minutes without interruption, and can only stand/walk for two hours total in an eight-hour workday. Dr. Ezroj commented that x-rays "revealing Grade 2 spondylolisthesis and osteophytes throughout lumbar spine" support these assessments. (Id.).

**3. Andrew Kahn, M.D.**

On January 31, 2013, Plaintiff visited Dr. Andrew Kahn, M.D., for a physical medicine and rehabilitation outpatient consultation. Notes from this visit indicate that Plaintiff walked without an assistive device and moved easily from sit to stand and with

transfers to the exam table. (AR 217). Physician notes indicate that Plaintiff's lumbar spine was nontender to palpation, with tenderness only noted in the paraspinal muscles at L5 to S1. (Id.). Plaintiff's manual motor testing was normal, and her sensation was intact to light touch throughout bilateral lower extremities. (Id.). Plaintiff had normal range of spinal motion and no pain with twisting of spine in extension. (Id.). Plaintiff had normal range of motion of the hip, and a negative straight leg raising test. (AR 218). Under "Plan," Dr. Kahn's notes state that Plaintiff "was informed of the spectrum of treatment options, from conservative monitoring, physical therapy/therapies, medications, interventions/injections or surgical evaluation/treatment." (AR 218).

## C. Reviewing Physician, Dr. James Wellons, M.D.

On November 15, 2013, State Agency reviewing physician, Dr. James Wellons, M.D., reviewed Plaintiff's medical records and provided a medical assessment. (AR 54-55). Dr. Wellons noted that Plaintiff's "MDIs include: Spondylolisthesis of the LS" and stated that these "MDI's cannot reasonably be expected to produce the alleged pain and symptoms." (AR 55). He further noted that "[t]here is no PE that describes abnormalities that support" limiting Plaintiff to standing or walking two hours during the workday and lifting or carrying no more than ten pounds. (Id.). He elaborated that the "tx Orthopedist notes [these limitations] and notes he does not endorse" them. (Id.). Dr. Wellons also found that "XRs of both knees are normal except for mild

osteopenia." (Id.).  Ultimately, Dr. Wellons found that Plaintiff did not have any severe physical impairment or medically diagnosable knee condition and only had a non-severe spinal impairment.  (Id.).

## D. Vocational Expert Testimony

Vocational Expert ("VE") Susan Allison testified at Plaintiff's hearing before the ALJ.  (AR 44-47).  The ALJ asked the VE to consider a series of factors in creating two hypotheticals for determining Plaintiff's ability to work.  (AR 45-46).  The ALJ's first hypothetical included an individual with certain postural limitations who could perform light work, as defined in the Dictionary of Occupational Titles[2].  (AR 45).  The VE testified that an individual with the described hypothetical limitations could perform Plaintiff's previous work as a nanny as she performed it, but not as the DOT describes it.  (Id.).

---

[2]  "*Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567 (b).

The ALJ's second hypothetical included all the limitations described in the first hypothetical, however the individual could only perform work at a sedentary level[3] and had additional postural restrictions. (Id.). The VE testified that an individual with these hypothetical limitations could neither perform Plaintiff's previous work as a nanny as she performed it nor as it is generally performed in the national economy. (AR 45-46).

**E. Third Party Adult Function Report**

On October 27, 2013, Plaintiff's father, Robert Soyka, completed a Third Party Adult Function Report on Plaintiff's behalf. (AR 145-154). Plaintiff's father stated that he lives in a mobile home with Plaintiff and that they talk, watch TV, and go to dinner together. (AR 145). He noted that Plaintiff helps with light chores (AR 146), can only lift fifteen lbs. (AR 147), goes on short walks, drives a car, and goes out alone. (AR 149). He also indicated that Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR 15). Plaintiff's father stated that Plaintiff goes to the movies and to concerts with friends and her mother. (AR 151). When prompted to describe any changes in social activities since

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

Plaintiff's conditions began, Plaintiff's father noted that she "[n]ever did go out much." (AR 151). He noted that Plaintiff's injury affects her ability to lift, climb stairs, bend, stand, kneel, walk, and sit. (AR 151). He elaborated that Plaintiff can walk 50 yards before needing to stop and rest. (AR 152).

**F. Adult Function Report**

On October 30, 2013, Plaintiff completed an Adult Function Report (AR 157-164), wherein she stated that she is in pain "24/7" with her back (AR 157). She stated that she helps take care of her mother, who is very ill. (AR 158). She noted that she has no problems with personal care (Id.), prepares meals daily (AR 159), and that she scrapbooks and plays guitar every once in a while (AR 161). She stated that once a month, if that, she may go out to eat with others or go to their home to watch TV or to visit and talk. (AR 161). She stated that she can pay attention for "a long time" and that she has no problems getting along with family, friends, neighbors, or others. (AR 162). She stated that she drives and is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR 160). She noted that she can walk for thirty minutes before needing to stop and rest, except that she pushes herself to walk longer when she goes grocery shopping. (AR 162).

## THE FIVE STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[4] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[4] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1520, 416.910.

(2) Is the claimant's impairment severe?  If not, the
    claimant is found not disabled.  If so, proceed to
    step three.

(3) Does the claimant's impairment meet or equal one
    on the list of specific impairments described in
    20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,
    the claimant is found disabled.  If not, proceed
    to step four.

(4) Is the claimant capable of performing his past
    work?  If so, the claimant is found not disabled.
    If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not,
    the claimant is found disabled.  If so, the
    claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R.
§§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

    The claimant has the burden of proof at steps one through four
and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant
meets his burden of establishing an inability to perform past work,
the Commissioner must show that the claimant can perform some other

13

work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## V.

### THE ALJ'S DECISION

On November 12, 2014, after employing the five-step sequential evaluation process, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 20). At step one, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since July 16, 2013, the alleged disability onset date. (AR 14). At step two, the ALJ found that Plaintiff's severe impairments were spondylolisthesis, lumbosacral spondylosis, and lumbar strain. (Id.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (AR 15). The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) including lifting and/or carrying 20 pounds occasionally, 10 pounds frequently, and sitting, standing, and walking each for 6 hours in an[] 8-hour workday. As for exceptions, the claimant can only occasionally bend, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and/or scaffolds.

(AR 15-16).

At step four, the ALJ determined that Plaintiff is "capable of performing past relevant work as a nanny. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity." (AR 19).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the

record as a whole." <u>Auckland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F. 3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Auckland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff contends that the ALJ committed legal error in not adequately assessing her testimony regarding her pain and limitations. (Pl. MSO at 2). Second, Plaintiff contends that the

16

ALJ failed to properly consider the opinions of Plaintiff's treating physician, Dr. Alberto Ezroj. (Id. at 8).

The Court disagrees. The record demonstrates that the ALJ conducted a thorough and proper analysis of Plaintiff's testimony and gave proper weight to Dr. Ezroj's opinions. Accordingly, for the reasons discussed below, the Court finds that the ALJ's decision must be AFFIRMED.

A.  **The ALJ Provided Specific, Clear, And Convincing Reasons To Reject Plaintiff's Testimony**

Plaintiff argues that the ALJ committed legal error in not adequately assessing Plaintiff's testimony regarding her pain and limitations. (Pl. MSO at 2). Specifically, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's allegations. (Id. at 3). The Court disagrees and finds that the ALJ properly rejected Plaintiff's testimony.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Initially, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id. (citation omitted). If such evidence exists, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about

17

the symptom severity.  Id. (citation omitted).  In so doing, the
ALJ may consider the following:

> [One,] [the] ordinary techniques of credibility
> evaluation, such as the claimant's reputation for lying,
> prior inconsistent statements concerning the symptoms,
> and other testimony by the claimant that appears less
> than candid; [two,] [the] unexplained or inadequately
> explained failure to seek treatment or to follow a
> prescribed course of treatment; and [three,] the
> claimant's daily activities.

Smolen, 80 F.3d at 1284 (brackets added); Tommasetti v. Astrue,
533 F.3d 1035, 1039 (9th Cir. 2008).

Further, the ALJ must make a credibility determination with
findings that are "sufficiently specific to permit the court to
conclude that the ALJ did not arbitrarily discredit [plaintiff's]
testimony."  Tommasetti, 533 F.3d at 1039 (citation omitted).
Although an ALJ's interpretation of a claimant's testimony may not
be the only reasonable one, if it is supported by substantial
evidence, "it is not [the court's] role to second-guess it."
Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing
Fair, 885 F.2d at 604).

The ALJ considered evidence in most of the categories
enumerated above when determining that Plaintiff's symptoms are
not as severe as alleged.  First, objective evidence contradicted

allegations in Plaintiff's Disability Report and her testimony, making these allegations appear less than candid and thereby undermining her credibility. For example, x-rays of Plaintiff's knees were normal, suggesting that she has no significant knee problems, despite Plaintiff listing "knees" in her Disability Report. (AR 17, 132). Moreover, there is no objective evidence of peripheral neuropathy in her feet (AR 17), despite Plaintiff's testimony that her feet are in pain 24/7. (AR 35). Plaintiff contends that while the ALJ is correct in her assertions that there is no evidence of peripheral neuropathy, significant knee problems, ulcerative colitis or a learning disability, Plaintiff did not testify that these conditions rendered her disabled and that, "[s]ince they were not a basis of her testimony, the citations are irrelevant." (Pl. MSO at 3). However, it is appropriate for the ALJ to consider objective medical evidence that contradicts Plaintiff's alleged symptoms in finding her less than fully credible, whether or not she testified to total disability from these symptoms.

The ALJ did note that an MRI taken on September 23, 2013 supports Plaintiff's back allegations and acknowledged Plaintiff's diagnosis of spondylolisthesis, lumbosacral spondylosis, and lumbar strain. (AR 17). However, the ALJ noted that other than physical therapy and medication, doctors have prescribed a conservative treatment path for these conditions, indicating that Plaintiff's condition is not as severe as alleged. (Id.). Specifically, the ALJ noted, there have been no surgery referrals, no recent recommendations for epidural injections, or any other

significant medical interventions. (Id.). Moreover, the ALJ considered evidence that Plaintiff has normal range of motion in her back, without spasms or exacerbation of pain, and normal strength in her extremities. (AR 17, 514).

Additionally, the ALJ noted that no specialists have treated Plaintiff for her alleged conditions and, rather, only her family primary care physicians have administered treatment. (AR 17). Plaintiff argues that her physicians did not offer or recommend additional treatment options and that "[s]ince no additional treatment was offered or suggested, [her] testimony should not be discounted for failure to obtain additional treatment." (Pl. MSO at 4). However, an ALJ "is permitted to consider lack of treatment in his credibility determination." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Moreover, as the ALJ also observed, Plaintiff's activities of daily living suggest that her conditions are not as severe as alleged. (AR 17). The evidence reflects that Plaintiff is capable of handling personal care, preparing meals, washing dishes, doing laundry, dusting, driving, shopping, handling finances, and playing guitar. (Id.). These activities, the ALJ noted, indicate that Plaintiff is able to complete light household chores, which are "skills that are substantially similar to many working tasks." (Id.). Plaintiff argues that, when describing her daily activities, the ALJ mistakenly cites only to a form that Plaintiff's father completed. (Pl. MSO at 6). However, the ALJ specifically noted that Plaintiff's father, who lives with

Plaintiff (AR 145), "alleged substantially [] the same limitations as the claimant … However, he provided more detail." (AR 16). Moreover, Plaintiff admitted in her own Adult Function Report to performing several of these activities, including laundry, driving, and washing dishes. (AR 43) Plaintiff also acknowledged that she handles her own finances, as well as shops and plays guitar. (AR 157-164).

Plaintiff next argues that the "ALJ fails to show how these sporadic activities are consistent with light work." (Pl. MSO at 7). However, an ALJ may rely on a claimant's activities of daily living in assessing credibility not only if the activities are directly applicable to work, but also when they are inconsistent with the claimant's subjective allegations of disability. See Molina, 674 F.3d at 1112—13 ("While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (affirming ALJ's finding that claimant's "non-work activities . . . are inconsistent with the degree of impairment he alleges."). The ALJ appropriately determined that Plaintiff's activities of daily living indicate that her conditions are not as severe as alleged, thereby undermining her credibility.

The ALJ also noted that one of Plaintiff's primary care physicians, Dr. Song, commented in March of 2013 that Plaintiff could return to work as a nanny. (AR 18). Plaintiff argues that this is not relevant because Plaintiff is not alleging disability until July 16, 2013. (Pl. MSO at 5). However the ALJ specifically stated that the "medical evidence does not reflect a significant deterioration in the [plaintiff's] lifting and carrying or sitting and standing abilities between March 2013 and July 2013." (AR 18).

In sum, there are legally sufficient reasons for the ALJ to have declined to credit Plaintiff's subjective statements in their entirety. For these reasons, the ALJ's ultimate determination that Plaintiff's testimony was not credible is valid.

**B.      The ALJ Provided Specific And Legitimate Reasons To Reject Dr. Ezroj's Opinion**

Plaintiff next contends that the ALJ failed to properly consider the opinions of Plaintiff's treating physician, Dr. Ezroj. (Pl. MSO at 8). The Court disagrees and finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Ezroj's opinions.

Social Security regulations require the ALJ to consider all relevant medical evidence when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(e), 404.1527(c), 416.927(c). Where the Agency finds that the treating physician's opinion about the nature and severity of the claimant's impairments is well-supported by accepted medical techniques and is not inconsistent

with the other substantive evidence in the record, that opinion is ordinarily controlling. 20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

Nevertheless, the ALJ is also "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch, 400 F.3d at 679). An ALJ need not address every piece of evidence in the record, but only evidence that is significant or probative. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2006).

Furthermore, "[t]he treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and whether it is consistent with other

evidence in the record. See 20 C.F.R. § 404.1527. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751). To reject the uncontroverted opinion of Plaintiff's physician, the ALJ must present clear and convincing reasons for doing so. Andrews, 53 F.3d at 1041. Where, as here, the treating physician's opinion is contradicted by other doctors, the Commissioner may reject the opinion by providing "specific and legitimate reasons" for doing so that are supported by substantial evidence in the record. Rollins, 261 F.3d at 856 (citing Reddick, 157 F.3d at 725).

Here, the ALJ cited several specific and legitimate reasons supported by the record for giving minimal weight to Dr. Ezroj's opinions. First, the ALJ noted that Dr. Ezroj's opinion does not provide for any postural movement limitations despite Plaintiff's severe spinal impairment. (AR 18). The ALJ indicated that such limitations would be to accommodate pressure and rapid movement on the spine. (AR 18). Thus, it was inconsistent to find that Plaintiff was severely limited with regards to standing and walking but not to provide restrictions on activities such as bending and stooping.

Second, the ALJ found that Dr. Ezroj's opinion was inconsistent with objective medical evidence, stating that "[n]othing in the MRI … or other notes in the record support or suggest why such extreme sitting and standing limitations are necessary." (AR 18). The ALJ was referring to a September 19,

2013 MRI of Plaintiff's lumbar spine which showed Grade 1 spondylolisthesis (AR 18, 207), rather than Grade 2, as reported by Dr. Ezroj (AR 198). An ALJ is free to disregard conclusory opinions that lack support in the record. See, e.g., Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because opinion consisted of conclusory and unexplained check-off reports). The fact that no objective medical evidence supported Dr. Ezroj's findings supports the ALJ's determination.

The ALJ also noted that nothing in the treatment notes or physical therapy notes supported such extreme limitations. (AR 18). The fact that Dr. Ezroj's conclusion conflicted with his own treatment notes provides another valid basis upon which to reject his opinions. See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (holding that the ALJ properly rejected a treating physician's testimony in favor of an examining physician's statements because the treating physician's "extensive conclusions regarding [claimant's] limitations [were] not supported by his own treatment notes"); see generally 20 C.F.R. § 404.1527(c)(2), (d)(2); see also Tommasetti, 533 F.3d at 1041 (finding that ALJ properly discredited doctor's opinion where doctor's responses to questionnaire were inconsistent with doctor's own medical records). Dr. Ezroj's treatment notes from August 6, 2013 state that Plaintiff had a normal range of motion in her back without spasm

25

or exacerbation of pain, normal strength in her extremities, and did not exhibit any musculoskeletal tenderness. (AR 514). Plaintiff's primary diagnosis at that time was "strain of back." (Id.).

Plaintiff also argues that the ALJ's rejection of State Agency physician Dr. Wellons' opinion demonstrates that "the ALJ failed to properly reject the opinion of Dr. Ezroj because the ALJ is relying on no medical opinion or evidence to the contrary, and she is improperly interpreting the medical evidence as it concerns [Plaintiff's] spine impairment." (Pl. MSO at 10). The ALJ found that, while Dr. Wellons' opinion that Plaintiff did not have a medically diagnosable knee condition was accurate, his conclusions that there was only a non-severe spinal impairment was inconsistent with the spinal MRI, treatment notes, and physical therapy demonstrating a severe impairment. (AR 18). Additionally, the ALJ found that, although Dr. Wellons did not recommend any postural or exertional limitations, evidence suggested that Plaintiff required such limitations to reduce mobility requirements and spinal pressure. (Id.). However, the ALJ's decision was consistent with the totality of the evidence and any error in affording minimal weight to Dr. Wellons' opinion was harmless as it benefited Plaintiff.

The Court therefore disagrees with Plaintiff's contention that the ALJ improperly rejected Dr. Ezroj's opinions and finds that the ALJ provided specific and legitimate reasons for doing so.

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.


DATED:  May 23, 2017

                                    _____/S/_____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**